## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MATTERS INVOLVING | ) | **Misc. No. 19-204-JAD** |
| LAWRENCE W. WILLIS | ) | |
| REGARDING THE CHAPTER | ) | |
| 13 TRUSTEE'S MOTIONS FOR | ) | |
| DISGORGEMENT OF FEES, | ) | |
| MOTIONS TO COMPEL | ) | |
| AND RELATED FILINGS. | ) | |
| | x | |

## MEMORANDUM OPINION

This Miscellaneous Proceeding was opened by operation of an order issued by Chief U.S. Bankruptcy Judge Carlota M. Böhm on May 13, 2019.

This matter is a core proceeding over which this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(O), and 1334. See also Billing v. Ravin, Greenberg, & Zackin, P.A., 22 F.3d 1242 (3d Cir. 1994)(malpractice claim against attorneys fell within the bankruptcy jurisdictional statutes when claims related to prosecution of bankruptcy case).

Chief Judge Böhm's order was the result of similar motions to disgorge fees (the "Disgorgement Motions") filed by the Chapter 13 Trustee in the 32 bankruptcy cases identified in the list attached hereto at Exhibit "A." The gravamen of the Disgorgement Motions is that attorney Lawrence W. Willis and/or his law firm Willis & Associates (collectively, "Willis") was retained as bankruptcy counsel by the various debtors in the cases referenced on Exhibit "A."

In connection with his legal representation of the debtors in these cases, and prior to filing each case with the Court, Willis received an advance expense retainer of $500 from each of his clients.  Included as part of the expenses incurred in bankruptcy cases are the filing fees due to the Clerk of the Bankruptcy Court pursuant to 28 U.S.C. § 1930.

Despite receiving the expense retainers, Willis caused the 32 bankruptcy cases to be filed without the payment of the requisite filing fees to the Clerk of the Bankruptcy Court.  Instead, Willis filed motions asking that his clients be permitted to pay the filing fees over time (collectively, the "Installment Motions"). Of course, Fed.R.Bankr.P. 1006 requires that such motions state that the "debtor is unable to pay the filing fee except in installments" and each of Willis' motions made such an averment.

In fact, the Installment Motions state unequivocally that the debtors were "unable to pay" the filing fees up front.  When the Installment Motions were before the Court, Willis made no mention in his pleadings of the expense retainers previously paid to Willis by his clients.[1]

Instead, the Installment Motions filed by Willis state, in pertinent part, as follows:

> By signing here, you state that you are unable to pay the full

---

[1] The Installment Motions were granted without the necessity of a hearing based upon the certification that the debtors were unable to pay the fees absent the opportunity to pay the filing fees in installments.

filing fee at once, that you want to pay the fee in installments, and that you understand that:

> • You must pay your entire filing fee before you make any more payments or transfer any more property to an attorney, bankruptcy petition preparer, or anyone else for services in connection with your bankruptcy case.

See, e.g., *In re Lisa M. Boyd*, Case No. 14-22267-GLT at ECF No. 3; *In re Barry and Ashley Sipes*, Case No. 17-70667-JAD at ECF No. 3; and *In re Ashley M. Detweiler*, Case No. 17-70896-JAD at ECF No. 3.

To be clear, the Installment Motions filed by Willis comport with the official form as described in Fed.R.Bankr.P. 1006.  What is troubling to the Court, however, is that Willis would cause such form motions to be filed with the Court when the factual circumstances do not support them.  Those factual circumstances are that in each of the 32 cases, Willis received advance expense retainers in amounts more than sufficient to cause the bankruptcy filing fees to be paid in full when (1) the bankruptcy cases at issue were filed and (2) prior to the filing of the Installment Motions.

The record also includes the fact that in addition to the expense retainers, some of the debtors had sufficient additional liquid assets to pay the filing fees up front upon the commencement of their bankruptcy cases, and such liquid assets belie the contention that the debtors were "unable to pay" the filing fees.  The Court, however, was not aware of the liquid assets when the Installment Motions were granted because none of the debtors' schedules of assets or statements of

-3-

financial affairs were filed as of the time the Installment Motions were filed or under consideration.

For example, in the matter involving Thomas J. McGinnis and Pamela A. McGinnis, the later filed schedules reflect that the debtors had $1,300 in checking accounts when the Installment Motions were filed with the Court. See *In re McGinnis*, Case No. 17-22846-GLT at ECF No. 23 at p. 6.

Similarly, in the matter involving James N. Doman and Sharon A. Doman, the later filed schedules reflect that the debtors acknowledged that they owned $2,605 in bank account assets upon the filing of their bankruptcy case. See *In re Doman*, Case No. 18-22823-GLT at ECF No. 20.

Likewise, in the matter filed on behalf of Valerie Tunstall, the debtor later disclosed that she owned an interest in a trust account valued at $48,333 as of the petition date in her case. See *In re Tunstall*, Case No. 14-23624-JAD at ECF No. 14.

Disconcerting to the Court is that despite a clear and present ability to pay, the filing fees remained largely unpaid until about the time the Disgorgement Motions were filed. In the cases which were closed or dismissed it appears that not only were the fees unpaid, it is undisputed that Willis did not return the unused funds to either his client or remit them to the Court. Instead, Willis kept the funds.

What is also troubling is that through the course of administration of some

-4-

of the cases at issue (but not all), Willis received payment of further attorney fees

from certain bankruptcy estates. See, e.g., *In re Barry & Ashley N. Sipes*, Case No.

17-70667-JAD at ECF No. 40.  Such payments violate Fed.R.Bankr.P. 1006(b)(3),

which plainly provides that all "installments of the filing fee must be paid in full

before the debtor or chapter 13 trustee may make further payments to an attorney

. . . in connection with the case."

By way of example (and not in any way limiting the issues or circumstances

for all of the cases *sub judice*), in the Sipes matter Willis received payment of

$351.81 even though no filing fees were paid pursuant to the installment request.

Id.

Further troubling is that in all of the 32 cases, Willis retained and

commingled the expenses or costs advanced by his clients in his operating

account (as opposed to being deposited into a trust account, which is also known

as an "Interest on Lawyer Trust Account" or "IOLTA"). See *Transcript of June 12,
2019 Hearing*, ECF No. 12 (the "June 12 Transcript"), at pp. 18.

The Chapter 13 Trustee thus filed the Disgorgement Motions to compel the

payment of the filing fees, which for the first time made the Court aware of this

problem with Willis' practices.[2]

---

[2] In cases where the applicable case was closed, the Chapter 13 Trustee also filed a
motion to reopen and paid the reopening fee. The Chapter 13 Trustee has sought repayment of
the reopening fees in these proceedings.   As set forth in the body of this Memorandum Opinion,
Willis has averred that he repaid the reopening fees to the Chapter 13 Trustee.  To the extent
continue...

Since on or about the time of the filing of the Disgorgement Motions, Willis avers that he immediately took the necessary steps to remit the bankruptcy filing fees to the Chapter 13 Trustee (who is to remit them to the Clerk) and reimburse any reopening fees to the Chapter 13 Trustee to the extent she incurred them in the course of prosecuting this matter.

On June 12, 2019, the Court conducted a hearing on the Disgorgement Motions. At the hearing Willis admitted that in each of the 32 cases at issue, the expense retainer and installment fee requests were processed by his office in substantially the same way as set forth above. See June 12 Transcript at pp. 4-8.

Not only was it uncontested that the installment requests and expense retainers were handled in the aforementioned fashion, Willis admitted that none of his clients actually saw or signed the Installment Motions, despite the fact that the filed documents contain an alleged electronic signature (or "/s/") of the affected client. See June 12 Transcript at p. 7.

At the June 12, 2019 hearing, Willis acknowledged that it was, and is, not appropriate to affix an electronic signature of his clients on pleadings which his clients neither saw nor consented. Id. at pp. 7-8.

An explanation Willis offered for such a practice included the admission that the computer program he uses to file such documents automatically fills the form.

---

[2]...continue
such reopening fees have not been reimbursed by Willis, an order shall be entered that directs Willis to reimburse the Chapter 13 Trustee any reopening fees that have not been repaid.

Id. at p. 7.  Apparently Willis was unaware that the "computer did it" defense has

not been accepted by various courts in other contexts. See Wingard v. Altoona

Regional Health System (In re Wingard), 382 B.R. 892, 902 (Bankr. W.D. Pa.

2008)(citing In re Rijos, 263 B.R. 382, 392 (1st Cir. BAP 2001) and McCormack

v. Federal Home Loan Mortgage Corp. (In re McCormack), 203 B.R. 521, 523-525

(Bankr. D.N.H. 1996)(rejecting the "computer did it" defense in the context of

determining that a creditor violated the automatic stay in bankruptcy).

Willis also admitted that he "never really looked [too] closely at that

application until this matter was brought to [his] attention." Id. at p. 28.  The

result was erroneous or false representations to the Court that Mr. Willis' clients

reviewed and/or signed the relevant Installment Motions.

Given the signature issue, the Court had the following colloquy with Mr.

Willis at the June 12, 2019 hearing:

> THE COURT: Do you file other documents in the case
> where you have a signature line, but the person didn't
> know that you were doing that?
>
> MR. WILLIS: No.  We have everything signed.  We have
> wet signatures on all of those schedules and statements.

See Transcript of June 12, 2019 Hearing, ECF No. 12, at p. 8.

At the June 12, 2019 hearing, Willis also did not contest the fact that his

filings with the Court regarding disclosure of compensation pursuant to

Fed.R.Bankr.P. 2016[3] were incorrect in that the statement of attorney filed in each

case stated that "For legal services, I have agreed to accept zero dollars." Id. at pp.

12 - 13; see, e.g., *In re Lisa A. Boyd*, Case No. 14-22267-GLT at ECF No. 15 at p.

29. They also state that "prior to the filing of the statements, I have received zero."

Id.

Such statements were incorrect because Willis collected various retainers

and expected to be paid for his work on each case. Thus, contrary to the

Fed.R.Bankr.P. 2016 statements, Willis was not working on a *pro bono* basis.

Parenthetically, Willis also acknowledged at the June 12, 2019 hearing that

the filing of the Installment Motions was a tactical decision by Willis to avoid any

risk of loss that could be associated with any client retainer check being returned

by the issuing bank due to insufficient funds. No explanation was provided at the

June 12, 2019 hearing as to whether any of the 32 retainer checks at issue were

returned due to insufficient funds.

Also, no legal explanation was provided for Willis' failure to adhere to

Pennsylvania's IOLTA rules. The Disciplinary Board of the Supreme Court of

Pennsylvania has recently held that commingling of expense retainer funds is

---

[3] Courts have long held that a debtor in bankruptcy is in a vulnerable position. Therefore
11 U.S.C. § 329 and Fed.R.Bankr.P. 2016 require that a debtor's transactions with his or her
attorney are subject to scrutiny by the Court upon proper disclosure by the attorney. See In re
Smitty's Truck Stop, Inc., 210 B.R. 844 (10th Cir. BAP 1997), for a comprehensive discussion of
the history and application of 11 U.S.C. § 329 and Fed.R.Bankr.P. 2016 in the context where
counsel does not adequately disclose payments received from debtors in contemplation of
bankruptcy.

improper. Office of Disciplinary Counsel v. Freitag, No. 188 DB 2017 (D. Bd. Order 6/28/2019)(public reprimand against bankruptcy attorney for depositing filing fees into his business account, and not IOLTA account).

The hearing on this Miscellaneous Proceeding was continued to July 24, 2019. In the interim, putative debtor Mr. Thomas Bicker filed an adversary proceeding against Willis seeking damages for an *ultra vires* bankruptcy case Willis allegedly filed on behalf of Mr. Bicker at Case No. 16-70739-JAD. See *Bicker v. Willis et al.*, Adversary No. 19-07011-JAD (the "Bicker Complaint").[4]

The Bicker Complaint alleges that the bankruptcy petition filed at Case No. 16-70739-JAD was filed without Mr. Bicker's knowledge or consent. Willis denied the allegations contained in the Bicker Complaint, but acknowledged that he failed to obtain the actual or "wet signature" of Mr. Bicker in connection with the case filing.

The Court was surprised by Willis' acknowledgment that he had no "wet signature" of Mr. Bicker because in this Miscellaneous Proceeding Willis represented to the Court that Willis had everything signed by his clients (with the exception of the Installment Motions). In light of these events, the Court ordered Willis to supplement the record and provide a list of all bankruptcy petitions he filed since January 1, 2017 for which he did not obtain his client's signature.

---

[4] Nothing contained herein should be deemed or construed to be a ruling on the merits of the Bicker Complaint. That matter is left for determination at a later date, if necessary. All claims, and all defenses, by the parties are reserved.

In response to the Court's directive, Willis identified 42 cases filed from and after January 1, 2017 where his office failed to obtain a "wet signature" from the debtor(s).[5] A list of those cases is annexed hereto at Exhibit "B." That is, Willis filed 42 cases having the affirmative representation that his client signed the petition, but such representation in each of the 42 cases was not true.[6]

While 42 cases referenced on Exhibit "B" lacked the "wet signature" on the actual petition form, Willis has represented that 18 of these clients have also not completed the "Declaration of Electronic Filing." See Local Bankruptcy Rule ("LBR") 5005-7.[7] Thus, in 18 of these cases there is no signature of Willis' clients whatsoever on the additional forms required by our Local Rules.

---

[5] Willis is a high volume filer of cases in the Western District of Pennsylvania. According to his own count, Willis filed 806 cases during the period from January 1, 2017 through the present. It is true that the number of cases omitting an actual or "wet signature" is a small portion of total filings made by Willis. This fact, in and of itself, does not warrant ignoring the importance of counsel obtaining a client signature, especially when the client is expected to certify consent and accuracy of the filing with the Court. Nor is the amount of deficient filings *di minimis*. Rather, they are roughly 5% of his filings. To be fair to Willis, the Court has construed the number of omissions relative to the total filings as indicia of Willis' efforts to comply with his duties as an officer of the Court and is a mitigating factor with respect to the range of consequences considered by the Court.

[6] Willis filed a status report indicating that the number of cases without a signature is 44. At the July 24, 2019 hearing he corrected that statement and produced a list indicating that the number is 42.

[7] LBR 5005-7(a) states, in pertinent part, that the "original signature of the debtor(s) authorizing the electronic filing of the bankruptcy case shall be delivered to the Clerk on an executed paper version [of a local form] . . . within fourteen (14) days of electronic filing of the petition." LBR 5005-15(a) requires counsel to retain the papers originally signed by his or her client for a period of "six (6) years from the date of case closing." LBR 5005-15(c) expressly provides that counsel's failure to maintain the signed documents for the requisite period will subject counsel to "sanctions, including, without limitation, disgorgement of fees."

At the July 24, 2019 hearing, Willis reiterated that he did not dispute the facts set forth above.  At the July 24, 2019 hearing, he again reiterated that he accepted responsibility for the shortcomings related to his filing fee and expense retainer practices, and summarized various remedial steps he had taken (and is taking) regarding the same.

Such steps include the remittance of all fees due, the hiring of disciplinary counsel to review his practices to ensure that they are compliant with applicable law, the deposit of all expense retainers into his IOLTA account, and the hiring of an accountant to assist him in his bookkeeping practices.

Willis also indicated at the July 24, 2019 hearing that he is correcting his signature practices (i.e., that he will be more diligent in timely and promptly obtaining them in connection with the filing of cases), and is willing to accept other consequences that the Court deems appropriate in light of the fact that he previously represented in his filings that his clients signed documents when they clearly did not.

Given the above, the Court is called upon to determine whether there should be any additional consequences or corrective action ordered upon Willis.  The Court believes that additional consequences are in order under the facts and circumstances of these cases.  Specifically, the Court has considered the professional conduct implications regarding the manner in which these matters were handled by Willis.  A summary of them include:

- Willis violated Fed.R.Civ.P. 11 and Fed.R.Bankr.P. 9011 by affirmatively representing that he had his clients sign the petitions and Installment Motions when they had not.

- Applicable case law provides that attorneys cannot endorse the petition and related documents for their clients in instances where certifications pursuant to 28 U.S.C. § 1746 are required. See, e.g., Schwab v. Tanribiler (In re Klitsch), 587 B.R. 287, 292 (Bankr. M.D. Pa. 2018), opinion corrected, No. 5-17-BK-01298-JTT, 2018 WL 5733715 (Bankr. M.D. Pa. Oct. 31, 2018), and the cases cited therein; see also United States Trustee v. Jones (In re Alvarado), 363 B.R. 484, 492 (Bankr. D. Va. 2007)(attorney forged the debtor's electronic signature on petition); In re Ulmer, 363 B.R. 777, 783 (Bankr. D. S.C. 2007)(counsel filed documents bearing her electronic signature even though she did not actually review or physically sign the documents).

- Willis also violated these rules by representing that his clients were "unable to pay the filing fee" when, in-fact, they had tendered an expense retainer and/or had sufficient liquid assets to pay the filing fees in full. See, e.g., In re Oliver, 480 B.R. 275 (Bankr. W.D. Ky. 2012)(debtor is able to pay filing fee when counsel receives expense retainer, thus representations otherwise are false and sanctionable).

- Such false representations also violate Rule 3.1 of the Pennsylvania Rules of Professional Conduct, which states that a lawyer "shall not . . . assert . . . an issue . . . unless there is a basis in law and fact" for doing so.

- Such of conduct of Willis violates Rule 3.3 of the Pennsylvania Rules of Professional Conduct which imposes upon counsel a duty of candor to a tribunal. See, e.g., In re Denny, Case No. 15-51918, 2018 WL 2325772, at *3 (Bankr. E.D. Ky. May 22, 2018).

- Willis' conduct encroaches upon Rule 8.4 of the Pennsylvania Rules of Professional Conduct because misrepresenting client signatures is prejudicial to the administration of justice. See, e.g., In re Pagaduan, 429 B.R. 752, 764-65 (Bankr. D. Nev. 2010), order aff'd in part, vacated in part, 447 B.R. 614 (D. Nev. 2011)(attorney who falsely stated debtor had taken credit counseling course violated Nevada rules of professional conduct)

- Rule 1.4 of the Pennsylvania Rules of Professional Conduct imposes a duty upon counsel to communicate with his or her client. Willis violated this duty by filing petitions and motions with the Court and representing that his clients had signed them when, in-fact, they did not.[8] Willis also violated this Rule of Professional Conduct by not discussing the Installment Motions with his clients.

- Willis' conduct violates 11 U.S.C. § 526(a)(2) inasmuch as this provision of the Bankruptcy Code makes it unlawful to make any untrue or misleading statement in a document filed in a bankruptcy case.

- Willis' failure to obtain and retain actual signatures of his clients with respect to bankruptcy petitions he has filed violates LBR 5005-7 and LBR 5005-15.

- Willis' acceptance of further compensation when filing fees remained unpaid violates Fed.R.Bankr.P. 1006.

- Willis' inaccurate statement of attorney violates Fed.R.Bankr.P. 2016 and the disclosure requirements of debtor's counsel in bankruptcy. In re Matters Involving Prof'l Conduct of Mazzei, No. 14-00205-GLT, 2015 WL 4055475, at *11 (Bankr. W.D. Pa. July 1, 2015); see also In re Berg, 356 B.R. 378 (Bankr. E.D. Pa. 2005) and In re Busillo, No. 15-15627 (JNP), 2018 WL 6131767, at *3 (Bankr. D.N.J. Oct. 29, 2018).

- Willis' commingling of expense retainers without depositing them into his IOLTA account appears to implicate his fiduciary duty of

---

[8] As to the petitions lacking signature, Willis contends that he had express client authorizations to file the petitions identified at Exhibit "A" and Exhibit "B," and that he took various steps to ensure client identity and consent. The Court accepts Mr. Willis' representation. The Court also observes that the excuse offered by Mr. Willis in terms of filing petitions without his office having at least a photocopy, text image, fax image or other remote copy of the petition signed by the client is not necessarily convincing as a "best practice." That is, Willis contends that all of the petitions were "emergency" filings and that he lacked the time or resources to obtain prior proof that the petition was signed. The Court submits that if a matter is a true emergency, the putative client should have every incentive to act promptly and to find a way to transmit the signed petition to Mr. Willis. Moreover, modern technology has made it easier than ever to transmit documents over the internet.

safekeeping of client property as set forth in Rule 1.15 of Pennsylvania's Rules of Professional Conduct. See also, Freitag, supra.; see also Office of Disciplinary Counsel v. Hayward, No. 1658 DD No. 3, No. 123 DB 2009 (Pa. Jan. 19, 2011).

- Rule 1.16(d) of the Pennsylvania Rules of Professional Conduct requires counsel to refund "any advance payment" of fees or expenses that have not been earned or incurred. Willis' retention of excess expense retainer funds in his operating account after a case has been closed or dismissed,[9] and not either remitting them to the Clerk or returning them to his client(s) violates this rule.

- Willis' economic rationale or good intentions in terms of the strategic choices he made regarding the signing of petitions and prosecuting the Installment Motions is of no moment. See, e.g., In re Rivera, 342 B.R. 435, 460 (Bankr. D.N.J. 2006)(the "pure heart and empty head" defense is not available); see also Young v. Young (In re Young), 789 F.3d 872, 881 (8th Cir. 2015).

Willis suggested at the July 24, 2019 hearing that his keeping of the unused expense retainers is appropriate under the Court's Local Rules relating to "no-look" fees. See LBR 2016-1(f)-(j) for the "no look" requirements.

Willis misinterprets the "no look" provisions of the Court's Local Rules. Essentially, Willis contends that the "no look" provisions of our Local Rules

---

[9]  While the expense retainer funds were deposited into Willis' operating account, no evidence has been produced indicating that Willis spent the funds. This does not mean that Willis has not spent the funds. Rather, the impact of commingling the funds is left for an IOLTA audit by the Pennsylvania Disciplinary Board. The record in this case is that Willis contends that all of the expense retainer funds have now either been paid over to the Chapter 13 Trustee by Willis or that Willis has compensated the affected debtors in the 32 cases *sub judice* by remitting sums equal to the amount of the 32 retainers to the Chapter 13 Trustee, who in-turn has (or will) pay the unpaid filing fees to the Clerk of the Bankruptcy Court. Any remaining expense retainer funds or attorney fee related retainer funds held by the Chapter 13 Trustee above and beyond amounts necessary to pay unpaid filing fees shall be disposed in accordance with the order of this Court.

constitute a rule based flat fee that is imposed upon all debtors by the Court, and that the flat fee is immediately earned by counsel upon the filing of a bankruptcy case. Willis misinterprets the "no look" component of the Local Rules because it does not mandate a "flat fee" in all cases, and it does not provide anywhere that the fees and expenses of counsel are "earned" or "incurred" merely upon the commencement of a bankruptcy case.

Rather, the "no look" rules of this Court set forth the minimum services required to be performed by bankruptcy counsel in consumer Chapter 13 cases. It also sets forth the <u>maximum</u> amounts of compensation and expenses that are allowable to counsel without the necessity of requiring counsel to incur the time and expense of prosecuting a fee petition. The "no look" allowance is therefore a mere rebuttable presumption as to the amount of fees and expenses which are deemed reasonable for counsel in a Chapter 13 bankruptcy, assuming counsel performs the required functions and services.

In addition to the "no look" prosecutorial presumption, the precise fee and expenses charged by counsel (and when they are earned or incurred) is governed by the applicable fee agreement between the client and counsel. The Court is not aware of any legal authority under the Court's Local Rules governing "no look" fees that provides that the entirety of an "expense" or "cost" retainer is fully "earned" or "incurred" by counsel upon receipt, and the Court's own research has not found any case-law supporting such a proposition.

-15-

To the extent an expense retainer could constitute fee income to a lawyer, whether such payments by a putative debtor in advance to counsel are fully earned upon receipt would have to be dependent upon on the terms and conditions of both the engagement agreement and applicable law. See, e.g., Office of Disciplinary Counsel v. Ostrowski, No. 1556 DD No. 3, No. 135 DB 2008 (Pa. Feb. 9, 2010)(retainer agreement that failed to specify funds were non-refundable and earned upon receipt did not entitle counsel to be paid the stated "flat fee"); see also Commonwealth of Pennsylvania v. Cunningham & Chernicoff, P.C. (In re Pannebaker Custom Cabinet Corp.), 198 B.R. 453 (Bankr. M.D. Pa. 1996)(discussing retainers and bankruptcy); In re Renfrew Center of Florida, Inc., 195 B.R. 335 (Bankr. E.D. Pa. 1996)(same); In re Heritage Mall Associates, Inc., 184 B.R. 128 (Bankr. D. Or.1995)(same, but under Oregon law); Douglas R. Richmond, Understanding Retainers & Flat Fees, 34 J. LEGAL PROF. 113 (2009)(a general discussion regarding the types of retainers paid to counsel and when they are earned).

Willis has pointed to no provision in his engagement agreement which supports the notion that the entirety of the expense retainers were "earned" or "incurred" upon his receipt of the sums in question. The Court's own independent review of the form fee agreements utilized by Willis reveals that Willis required his clients to post a retainer for "fees" for services that are allegedly "nonrefundable" and "not subject to the escrow requirements of Pennsylvania Rule of Professional

Conduct 1.15 and may be utilized immediately by [Willis] as income." The agreements do not contain the same "nonrefundable," fully "incurred," or fully "earned upon receipt" provisions relating to an "expense" retainer or advance payment for "costs." See Status Report Exhibits Cost, Signatures, Fee Agreements, ECF No. 20.

The Court also recognizes that regardless of the "no look" provisions of the Local Rules in this District, and regardless of the engagement agreement utilized by Willis, debtors' transactions with attorneys are always subject to plenary review by the Court for reasonableness pursuant to 11 U.S.C. § 329 and its implementing rules. This section of the Bankruptcy Code authorizes the Court to cancel agreements with attorneys when they provide compensation that is excessive or where such sums exceed the reasonable value of what the attorney provides the client in return. See 11 U.S.C. § 329(b).

This Court concludes that it is patently unreasonable for counsel to charge an advance expense or cost retainer, keep the funds, and not pay *bona fide* legal expenses such as filing fees. This is exactly what happened in the cases subject to this Miscellaneous Proceeding. Thus, even if Willis' interpretation of the fee agreements pass muster, such provisions are nugatory under the circumstances by operation of 11 U.S.C. § 329.

Willis' keeping of such advances for expenses also violates both Rule 1.5(a) and Rule 1.16(d) of the Pennsylvania Rules of Professional Conduct. The former

-17-

precludes the charging of any sum that is clearly excessive. The latter precludes counsel, upon the termination of representation, from keeping an advance payment of expenses that has neither been earned nor incurred.

In light of these events, the Court exercises its inherent duty of oversight and discretion, see Chambers v. NASCO, Inc., 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed. 2d 27 (1991) and 11 U.S.C. § 105(a), and determines that a number of remedial steps are required for Mr. Willis.

In exercising its discretion, the Court has duly considered the fact that Mr. Willis has been cooperative, and that he immediately and without contest remitted the retainer funds at issue to the Chapter 13 Trustee. In re Kraus, 185 A. 737 (Pa. 1936)(making restitution is a mitigating factor, but does not purge offense); Office of Disciplinary Counsel v. Knepp, 441 A.2d 1197 (Pa. 1982)(same); and Office of Disciplinary Counsel v. Monsour, 701 A.2d 556, 560 (Pa. 1997).

The Court also recognizes that Willis has been sincere, and acknowledges the shortcomings in the manner in which he has handled certain aspects of his practice. Not only has he acknowledged the shortcomings, he unilaterally took it upon himself to correct the problems that plagued his office and he has hired professionals to assist him in rectifying those matters. The Court views all of these steps as being mitigating factors thereby warranting consequences which nonetheless permit Mr. Willis to continue practicing as a member of the Bar of this Court.

Considering the totality of the record, further remedial action appears to be appropriate.  Such remedial action shall include:

1.    <u>Disgorgement Motions are Granted</u>.   The Chapter 13 Trustee's Disgorgement Motions shall be granted.  The filing fees collected by the Chapter 13 Trustee shall be immediately paid to the Clerk of the Bankruptcy Court if such fees have not already been paid.

2.    <u>Excess Expense Retainer Funds Shall Be Either Returned to the Debtors Directly or, In Instances Where the Chapter 13 Case Remains Pending, Applied to Plan Funding</u>.  To the extent Willis has remitted to the Chapter 13 Trustee retainer funds above and beyond the unpaid filing fees due the Clerk, the Chapter 13 Trustee shall remit such excess sums to the applicable debtor; provided however, if the applicable debtor has a chapter 13 case that remains open, the Chapter 13 Trustee shall be deemed to have complied with this directive if she applies such excess funds towards the applicable debtor's plan funding.

3.    <u>Refund of $100 Per Client Whose "Wet Signature" Was Not Obtained</u>.  In addition to the disgorgement as requested in the Chapter 13 Trustee's motions, Willis shall disgorge an additional $4,200 of the professional fees he was previously paid with respect to the cases identified in Exhibit "B."  In this regard, he shall return to each of the 42 clients[10] identified in Exhibit "B" an amount of $100 on account of the fact that Willis failed to obtain such clients' actual signatures when he filed their bankruptcy cases.

4.    <u>Repayment of Reopening Fees</u>.  Willis has represented that he repaid the Chapter 13 Trustee all of the reopening fees the Chapter 13 Trustee incurred in prosecuting the Disgorgement Motions.  To the extent such reopening fees have not been repaid to the Chapter 13 Trustee, Willis shall reimburse the unpaid fees to the Chapter 13 Trustee.

5.    <u>Continuing Legal Education</u>.  Because Willis' practice fell short of his

---

[10] For purposes of this directive, to the extent any of the cases listed on Exhibit "B" are joint filings, joint debtors shall be construed as a singular "client."  Thus, the intended effect is for Willis to return $100 per case.

professional responsibilities, continuing legal education is in order for Mr. Willis. In this regard, within the next 12 months, Willis is directed to learn from these mistakes and organize, develop, and present a one-hour continuing legal education program with the assistance of U.S. Bankruptcy Judge Gregory L. Taddonio on the topic of best practices for attorneys in consumer bankruptcy cases. The session should address topics involving client intake procedures, attorney certifications to the Court, time keeping and record keeping, and the proper handling of client funds.

- and -

6.   <u>Cooperation With IOLTA Audit</u>. In addition to the duty of competency and candor to the Court, lawyer fiduciary responsibility with respect to entrusted funds is paramount. By copy of this Memorandum Opinion and Order, the Court is advising the Pennsylvania Disciplinary Board that the Court recommends that the Board audit Willis for IOLTA compliance. In this regard, and to the extent an audit occurs, Willis is directed to provide full and complete cooperation with the requests of the Pennsylvania Disciplinary Board. The Court also respectfully requests that the results of any IOLTA audit be transmitted to this Court.

This Memorandum Opinion constitutes this Court's findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052. An Order consistent with this Memorandum Opinion shall be issued by the Court.

Date: August 5, 2019

_____
Jeffery A. Deller
United States Bankruptcy Judge

cc:   Lawrence W. Willis, Esq.
      Ronda Winnecour, Esq., Chapter 13 Trustee
      Paul J. Killion, Esquire, Pa. Chief Disciplinary Counsel
      David Lame, Esq., Office of Pa. Chief Disciplinary Counsel

FILED
8/5/19 4:36 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

Joseph Sisca, Esq., Assistant U.S. Trustee
Chief U.S. Bankruptcy Judge Carlota M. Böhm
U.S. Bankruptcy Judge Thomas P. Agresti
U.S. Bankruptcy Judge Gregory L. Taddonio

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Misc. No.   19-204-JAD** |
| **MATTERS INVOLVING** | ) | |
| **LAWRENCE W. WILLIS** | ) | |
| **REGARDING THE CHAPTER** | ) | |
| **13 TRUSTEE'S MOTIONS FOR** | ) | |
| **DISORGEMENT OF FEES,** | ) | |
| **MOTIONS TO COMPEL** | ) | |
| **AND RELATED FILINGS.** | ) | |
| _____X | | |

**EXHIBIT "A"**

| Case Number | Debtor(s) |
|---|---|
| 14-20411-GLT | Catherine M. Otterbeck |
| 14-21936-GLT | Phyllis A. Lockwich |
| 14-22267-GLT | Lisa M. Boyd |
| 14-23624-JAD | Valorie Tunstall |
| 14-24137-GLT | Glennard D. and Rozilyn A. Hood |
| 14-24463-GLT | Rebecca L. Graham |
| 16-70739-JAD | Thomas Bicker |
| 17-22846-GLT | Thomas J. and Pamela A. McGinnis |
| 17-70667-JAD | Barry and Ashley N. Sipes |
| 17-70896-JAD | Ashley M. Detwiler |
| 18-10727-TPA | Patricia Lynn Laniewicz |
| 18-20059-GLT | Kevin McCracken and Faith Baker |
| 18-20401-JAD | Andrew A. Fredericks |
| 18-22823-GLT | James N. and Sharon A. Doman |
| 18-22824-CMB | Julia M. Bray |
| 18-23085-CMB | Jonathan D. and Kelly L. Moore |
| 18-23488-GLT | Constance Saxman |
| 18-23767-GLT | Keith and Gina Stafford |
| 18-23853-JAD | Greg Guzzie, Jr. |
| 18-24841-CMB | Ronnell Taylor, Jr. |
| 18-24940-JAD | Nicholas Casino |
| 19-20098-JAD | Birch L. and Sherrie L. Foley |
| 19-20192-CMB | Jeremy K. and Melissa M. Isacco |
| 19-20239-JAD | Michael A. and Barbara M. Smith |
| 19-20240-GLT | Kevin S. and Kerrie A. Hardt |
| 19-20322-CMB | Neal McDowell |
| 19-20323-GLT | Dawn L. Greygor |
| 19-20327-GLT | Kimberly J. Bibey |
| 19-20436-CMB | Lewis C. Ouzts, Jr. |
| 19-20444-TPA | Michael D. Cephas |
| 19-70019-JAD | John Pecze, Jr. |
| 19-70036-JAD | Rocky A. and Norma L. Goldizen |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | **Misc. No.    19-204-JAD** |
| **MATTERS INVOLVING** | ) | |
| **LAWRENCE W. WILLIS** | ) | |
| **REGARDING THE CHAPTER** | ) | |
| **13 TRUSTEE'S MOTIONS FOR** | ) | |
| **DISGORGEMENT OF FEES,** | ) | |
| **MOTIONS TO COMPEL** | ) | |
| **AND RELATED FILINGS.** | ) | |
| _____X | | |

**EXHIBIT "B"**

| CASE | DEBTOR | CHAPTER | FILED | | DISMISSED | COMPLETED | FORM 1A FILED |
|---|---|---|---|---|---|---|---|
| 18-20286-CMB | Allison A Thompkins | 13 | 1/26/2018 | N/A | 4/19/2018 | N | 2/16/2018 |
| 18-22738-GLT | Bruce Millhouse | 13 | 7/6/2018 | N/A | 9/7/2018 | N | N |
| 17-20234-CMB | Carmen J Peluso | 7 | 1/23/2017 | N/A | 6/29/2017 | Y | 2/10/2017 |
| 17-70535-JAD | Carrie France | 13 | 7/14/2017 | N/A | 9/20/2017 | N | N |
| 18-21466-TPA | Chris L. Michaux and Jennifer N. Michaux | 7 | 4/14/2018 | N/A | 11/8/2017 | Y | 5/3/2018 |
| 18-23488-GLT | Constance Saxman | 13 | 9/1/2018 | N/A | N/A | Y | N |
| 18-21316-TPA | Crystal L. Greenaway | 7 | 4/4/2018 | N/A | 11/6/2017 | y | 4/23/2018 |
| 17-24414-CMB | Daniel P Harmon | 13 | 11/2/2017 | N/A | 5/11/2019 | y | 11/20/2017 |
| 18-70734-JAD | Debbie L. Fosselman and John Fosselman | 13 | 10/12/2018 | N/A | 12/6/2018 | N | 11/16/2018 |
| 17-21407-GLT | Dolores Stankovich | 13 | 4/6/2017 | N/A | 10/23/2017 | y | 4/21/2017 |
| 17-10814-TPA | George R. Bowser and Cynthia L. Bowser | 7 | 8/4/2017 | N/A | 4/10/2018 | Y | 8/22/2017 |
| 18-21384-GLT | Holly L Hacko | 7 | 4/10/2018 | N/A | 8/27/2018 | y | 5/3/2018 |
| 19-21406-CMB | James E Cross | 13 | 4/5/2019 | N/A | 6/11/2019 | N | N |
| 17-10557-TPA | Jeffrey L. Mennemeier | 13 | 5/25/2017 | N/A | 7/24/2017 | N | N |
| 18-70473-JAD | John Midkiff | 13 | 7/3/2018 | N/A | 9/7/2018 | N | N |
| 19-70203-JAD | John P. Fosselman | 13 | 4/4/2019 | N/A | 6/11/2019 | N | N |
| 17-24467-CMB | Jon E. Pekarcik | 13 | 11/5/2017 | N/A | 1/24/2018 | N | N |
| 17-70620-JAD | Karen Rowser and Mary Jo Canini | 13 | 8/23/2017 | N/A | 11/21/2017 | N | N |
| 18-23767-GLT | Keith Stafford and Gina Stafford | 13 | 9/24/2018 | N/A | N/A | Y | 10/22/2018 |
| 17-22423-GLT | Kevin S. Hardt and Kerrie A. Hardt | 13 | 6/13/2017 | N/A | 2/19/2019 | Y | 7/13/2017 |
| 18-10023-TPA | Lana S. Laughbaum | 13 | 1/11/2018 | N/A | 2/21/2018 | N | N |
| 17-23556-CMB | Leslie C. Gibson | 13 | 9/1/2017 | N/A | 11/20/2017 | N | 9/18/2017 |
| 17-22016-GLT | Leslie E Law | 13 | 5/12/2017 | N/A | 11/21/2017 | Y | 6/2/2017 |
| 18-24339-CMB | Lisa M Weinzen | 13 | 11/5/2018 | N/A | 1/11/2019 | N | N |
| 17-70870-JAD | Lisia Cartwright | 13 | 12/9/2017 | N/A | 5/22/2018 | Y | 1/12/2018 |
| 18-23649-GLT | Lori J Oshea | 13 | 9/13/2018 | N/A | 11/19/2018 | N | N |
| 19-21045-GLT | Lori J Oshea | 13 | 3/15/2019 | N/A | 5/22/2019 | N | N |
| 17-21692-CMB | Margaret C Birsic | 7 | 4/24/2017 | N/A | 6/19/2017 | N | N |
| 17-22951-CMB | Mark R. Kolar and Rosemary Kolar | 13 | 7/20/2017 | N/A | 12/29/2017 | Y | 8/8/2017 |
| 18-23834-CMB | Melissa D Arnold | 13 | 9/28/2018 | N/A | 12/7/2018 | N | 10/18/2018 |
| 18-70692-JAD | Richard Lewis, II | 13 | 9/20/2018 | N/A | 11/16/2018 | N | N |
| 18-24173-GLT | Robert R Bryan | 13 | 10/26/2018 | N/A | N/A | Y | 12/7/2018 |
| 17-20136-GLT | Robert Sweazen | 7 | 1/13/2017 | N/A | 6/16/2017 | Y | 1/30/2017 |
| 17-20158-CMB | Serena Richter | 13 | 1/16/2017 | N/A | 7/24/2017 | Y | 2/7/2017 |
| 17-20804-CMB | Shane A. Helsel | 13 | 3/2/2017 | N/A | N/A | Y | 3/27/2017 |
| 18-22822-CMB | Shannon C Redinger | 7 | 7/13/2018 | N/A | 11/29/2018 | Y | 7/30/2018 |
| 18-22248-JAD | Stacey J. Francis | 13 | 6/1/2018 | N/A | 8/6/2018 | N | N |
| 19-22029-GLT | Tammie L Ritenour | 7 | 5/18/2019 | N/A | N/A | Y | 6/10/2019 |
| 18-22332-JAD | Terri Darnell | 13 | 6/8/2018 | N/A | 8/6/2018 | N | 6/20/2018 |
| 17-23923-JAD | Victor W. Klemencic | 13 | 9/29/2017 | N/A | 12/14/2017 | N | N |
| 17-24859-JAD | Victor W. Klemencic | 13 | 12/1/2017 | N/A | 2/21/2018 | N | N |
| 18-21014-CMB | William H Merriman and Penelope S Merriman | 7 | 3/17/2018 | N/A | 8/13/2018 | Y | 4/4/2018 |